W. A. PEACHER et ux v. ISYDORE STRAUSS et al.

1. DEEDS—EVIDENCE.—If in a deed there be any material defect in the description of the land conveyed, parol evidence is admissible in aid of the deed.

2. SAME—LATENT AMBIGUITIES.—Latent ambiguities are raised by proof of extrinsic facts, and by the same kind of proof may be explained, and the law will not stop in its endeavor to remove uncertainty in written instruments until they appear incurably uncertain.

3. SAME—CASE AT BAR.—Parol evidence of the county and state in which land mentioned in deed is situate, is admissible where the deed is silent as to county and state.

ERROR to circuit court of Hinds county, 1st district. BROWN, J.

The opinion of the court contains a statement of the case.

*J. L. Hargrove* and *J. A. Brown*, for plaintiffs in error.

1. Though it was once thought that continuance was matter of discretion with the court below, and the refusal to grant it could not be reviewed on writ of error, it is now held, that if there was, in such refusal, a palpable error committed, without the correction of which manifest injustice will be done, a new trial will be granted by the supreme court. 8 S. & M. 415; 25 Miss. 125.

As the absent evidence is material, and due diligence was used to obtain it, and all this appears from the facts stated in the affidavit, this is a case for interference by the appellate court, both on principle and by the precedents. 3 Chit. Prac. 871; Act May 13, 1837; How. & Hutch. 610; Hutch. Code, 869; Rev. Code of 1857; 6 S. & M. 455; 7 ib. 722; 8 ib. 415; 25 Miss. 124; 30 ib. 500; Hutch. Code, 104, art. 10, § 4.

2. But one objection was made to the deed in the inferior court—the omission of the name of the county and state in the description of the lot. As this court will consider no objections to evidence which do not appear by the record to have been urged in the court below, the defendants must be confined in this court to that objection. 8 S. & M. 205; 39 Miss. 385; 38 ib. 103. But this defect was explained by the pleadings and proof. Under such circumstances, the objection was untenable, and the deed admissible. Latent ambiguity is helped by averment, and may be removed by testimony. Bac. Max. reg. 25; Broom's Leg. Max. 206; 30 Law Lib. Latent ambiguity is where the writing on its face appears certain, but the ambiguity is introduced by some matter out of the instrument, Bac. Max. reg. 25; Broom's Leg. Max. 261–3; Bac. Law Tracts, 99, 100; 8 Bing. 244; 8 How. (U. S.) 274;

Hiscocks v. Hiscocks, 5 M. & W. 363, 367 ; 32 Miss. 128.   The error in refusing to admit the deed is fatal. Although this proof alone may not have been sufficient, the plaintiff may have been prepared to prove all the necessary facts ; and they had a right to adopt what order they pleased in the introduction of their evidence. 13 S. & M. 32, 38 ; Davany v. Koon, 45 Miss. 71.

3. The certificate of purchase was equivalent to a patent or full documentary evidence of title.   Hutch. Code, 104, art. 9 ; Act Dec. 18, 1833 ; Dwarris on Stat. 693, 694 ; 2 Coke's Inst. 11, 136, 181 ; Hutch. Code, 1024.   Isbell's testimony was competent to prove the loss of the certificate, and as secondary evidence in lieu of its contents.   2 How. (Miss.) 766–8.

*W. & J. R. Yerger* and *Johnston & Johnston,* for defendants in error.

1. The description of the premises in the deed, the admission of which as evidence was refused, is so vague, indefinite and uncertain, that no person could by that description, identify the lands in controversy. This defect is fatal, and cannot be cured—the rule being that parol evidence is not admissible to contradict, vary, or add to a deed.   1 Phill. Ev. 548 ; 3 ib. 1428, note 961 ; 2 Stark. Ev. 754, 755 ; McGuire v. Stevens, 42 Miss. 725 ; Steinbact v. Stewart, 11 Wall. 566.

2. An application for a continuance is addressed to the sound discretion of the court, and cannot be assigned for error.

Tarbell, J. :

W. A. Peacher and Mary E. Peacher brought ejectment against Isydore Strauss, Henry Strauss and W. W. Wishart, to recover a parcel of land particularly described in the declaration, in which it is averred that Mary E. Peacher was, before her marriage with W. A.

Peacher, Mary E. Hicks, daughter of Josiah Hicks, now deceased, and that said Mary E. is now the only daughter and heir-at-law of said Josiah Hicks, deceased. The declaration further avers that the right of the said Josiah Hicks to the possession of the lands claimed, accrued on the 30th day of January, 1836, and the right of the plaintiffs accrued at the death of the said Josiah Hicks in 1866. The defendants pleaded the general issue. At the September term, 1871, of the circuit court wherein this cause was pending, a motion for a continuance made by plaintiffs was overruled. Upon the trial the plaintiffs offered in evidence a deed from James C. Isbel to Josiah Hicks, dated January 30th, 1836, which was objected to by defendants and rejected by the court. J. C. Isbell was sworn as a witness for plaintiffs, but his testimony was objected to by defendants, and the objection was sustained. The counsel for plaintiffs then offered to prove the value of the rents of the premises as claimed in the declaration, but the defendants objected, and the court refused to permit the testimony to be given. For the purposes of the trial, counsel for defendants admitted that Josiah Hicks was married to Jane Pierce lawfully, that both are dead, and that Mary E. Peacher is the only surviving daughter and heir-at-law of Josiah Hicks, deceased. Thereupon the cause was submitted to the jury, who returned a verdict for defendants. A motion for a new trial was overruled, and the plaintiffs sued out a writ of error, assigning as causes for reversal of the judgment, the denial of a continuance ; rejection of the deed from Isbell to Hicks; the refusal of the evidence proposed by the witness Isbell; declining to hear proof of rents; and in overruling the motion for a new trial.

The application for a new trial falls so far short of showing diligence or other good cause, that, independent of the question of discretion, our judgment approves the refusal to grant the motion. Upon the showing made,

error could have predicated only of its allowance, if at all.

The material portions of the deed from Isbell to "Hix" are these: "This indenture, made and entered into this 30th day of January, A. D. 1836, between James. C. Isbell, of the county of Hinds and state of Mississippi, of the one part, and Josiah Hix, of the same county and state, of the other part, witnesseth: that said James C., for and in consideration of the sum of four hundred dollars, to him in hand paid, and secured to be paid by the said Hix, he, the said James C., hath this day granted, bargained and sold, and do by these presents grant, bargain and sell unto him, the said Hix, the following described lot or parcel of ground, situate, lying and being in the town of Jackson, and known and described upon the plan of said town as lot No. 5, south, containing two acres." &ast; &ast; &ast; "To have and to hold," etc., &ast; &ast; &ast; with covenants of warranty. Signed, sealed and delivered in the presence of Isaac Johnson and Merrett Hix, as witnesses thereto. We observe that the name of the grantee is spelled therein "Hix," whereas, in the declaration and other proceedings, it is spelled "Hicks." To the introduction of this deed as evidence objection was made and sustained, because of the omission therefrom of the county and state as a part of the description of the land conveyed; or, in other woids, on the ground of uncertainty in the description, the town, but not the county and state, where the premises are located, being designated.

In this connection, the plaintiff offered to prove by James C. Isbell, "that he purchased said lot No. 5, south, containing two acres of land, at the first public sale of town lots in the city of Jackson, Miss., and paid for the same according to the terms of said sale, and received a certificate of purchase for the same according to law, which he retained for a long number of years; that said certificate is now lost or destroyed;

that said Isbell built a house on said lot No. 5, south, aforesaid, and occupied said house with his family for a long time, and continued to own said lot No. 5, south, up to January 30, 1836, as stated in the deed from him to Josiah Hix, of that date, and that said lot aforesaid is located in the town of Jackson, in the state of Mississippi, and county of Hinds, therein;" which was objected to and the objection sustained. With reference to this offer several questions arise; the first of which is as to parol proof of the contents of the certificate from the state. Whether there was or was not a record of this certificate in the proper department was not suggested, nor was it intimated whether or not there was any entry of its substance, or reference thereto, among the archives of the state, by which the certificate or the fact of the sale might be established by record evidence; nor were the statutes, if any, on the subject, produced or referred to, showing what, by law, ought to be matter of record, if anything. Neither was it stated whether search had been made for a record of the certificate, or of entries with reference thereto, though prior to the jury trial, upon the motion of a continuance, it was asserted by plaintiff that application had been frequently made to the secretary of state to issue a patent for the lands in controversy, and the inference is thence drawn, though the fact is not averred, that *data* existed upon which another patent might be prepared. Yet these *data,* if any, are not described; no effort to obtain a certified copy thereof, or a certificate of any kind from the secretary of state, with reference to them, appears; even a *subpœna* to bring the secretary, with or without these records, is not intimated; and with the office of their custodian, in the same town with the court-room where the trial of this case was progressing, this evidence was offered and refused. In this undeveloped condition of this point, we pass it without adjudication, to con-

sider what we deem the material question in the case, viz. :

Can the absence, from the description of the land of the county and state, as appears on inspection of the deed, be supplied by parol? Before discussing the law on this subject, it is proper to determine the facts upon which we are to base our judgment. It is, perhaps, significant, that plaintiffs did not offer to prove that Isbell continued to "occupy" these lots, though he claimed to "own" them to the date of the deed to Hicks. It was not pretended that Hicks, or those claiming through him, ever entered under the conveyance, or were in any way ever in possession of the premises. The plain inference is, that Isbell had ceased to occupy these lots prior to, and was not in actual possession at the date of the conveyance; that he did not deliver, nor did Hicks take possession under the deed; and that the plaintiffs have not at any time had possession of the lands sought to be recovered from defendants in this action. This point, then, is embraced in these facts: I. conveyed by deed a parcel of land, described as " lot No. 5, south, in the town of Jackson," without naming the county or state; without reference to prior occupancy by him; without reference to any other deed or to a certificate; without giving any local boundaries, such as adjoining residents or other description peculiar to the locality, by which the lots could be located; and without delivery of possession, or other means of location and identification on its face than the reference to the map of the town or survey. The parties to the deed, however, are described as residents of Hinds county, state of Mississippi; and it may be assumed that Isbell was in possession of the lot in controversy and made improvements thereon prior to 1836. But the map was not produced nor referred to on the trial, as far as we can see, nor, as we have seen, was there any intelligent statement with reference to the records per-

taining to the title to the land in question, whether there were such records, in fact, or any statute requiring any pertinent facts to be recorded, though the office of such records, if any there are, and the court-room where the title was to be tried, were not a thousand yards apart. The deed executed in 1836 was not recorded until 1871, nor, from the former date down to the latter, does there appear an assertion of any claim or right in virtue of it; and yet, in 1871, under the circumstances herein indicated, the plaintiffs came into court and asked to maintain their action by giving parol evidence of the contents of documents, under circumstances already detailed, and to support the deed by like proof of the county and state, which, as heretofore explained, are wanting in the description of the land therein contained. Ought extrinsic evidence, in aid of this defect, to have been allowed? As this question shall be answered, depends the application of the plaintiffs for a new trial. Entering upon the investigation of this question, as we did, with an impression decidedly adverse, an impression which the absence of preparation for trial on the part of the plaintiffs was not calculated to change, we have, nevertheless, been conducted, through an extended reference to text-books and adjudications, to the conclusion that the evidence offered, of the county and state, by parol, was admissible. We, however, by no means intend to say that this proof would have entitled the plaintiffs to a recovery, but only that it was competent, and ought to have been admitted. In this state, the courts do not attempt to control the order in which a party shall introduce his testimony; and hence it devolves upon us to determine only whether proposed evidence is legal and ought to be admitted, the courts below having a more direct control of causes by motions to strike out, and instructions to the jury.

The question in the case at bar is, in this state, substantially *res adjudicata.* In Hanna v. Renfro et al., 32

Miss. 125, which was an action of ejectment, the defendant objected to the introduction of a deed as a part of the plaintiff's title, " on the ground of uncertainty in the description of the land contained in it, which designated the proper sections, townships and ranges, but not the county or state, in which the land lay." The court say: " This was no ground of objection to the introduction of the deed as evidence. It was but a latent ambiguity, which was susceptible of explanation; and, if not explained and rendered certain by other evidence, it would have been proper to move to exclude the deed for want of certainty, and of identity of the land referred to in it, with the premises sued for." Whether the defect in the deed before us is a latent or a patent ambiguity, we do not think it necessary to decide, and we shall not explore the learning upon this interesting subject, but shall consider the authorities in their practical results, rather than as arranging themselves under either one of these distinctions, often subtle and difficult of application. Practically, no deed or conveyance of land was ever made, however minute and specific the description, that did not require extrinsic evidence to ascertain its location; and this is so, whether the description be by metes and bounds, reference to other deeds, to adjoining owners, water courses, or other description of whatever character. Looking through the authorities, it will be seen that, under every conceivable state of facts, and in every imaginable circumstance, the cases may be counted by hundreds, if not by thousands, where contracts, wills and deeds are made effective by the identification, by extrinsic evidence, of the person or subject intended, yet in no wise violating the rule, that such evidence " cannot be admitted to contradict, add to, subtract from, or vary the terms of a written instrument." 2 Phill. Ev. (Cow. & Hill's notes); p. 137, § 1.

In a clear and modern presentation of this subject (Parsons, vol. 2, ch. 1, part 2, p. 549,) it is said: "It is nevertheless certain that some evidence from without must be admissible in the explanation or interpretation of every contract. If the agreement be that one party shall convey to the other, for a certain price, a certain parcel of land, it is only by extrinsic evidence that the persons can be identified who claim or are alleged to be parties, and that the parcel of land can be ascertained. It may be described by bounds, but the question then comes, where are the streets, or roads, or neighbors, or monuments referred to in the description ; and it may sometimes happen that such evidence is necessary to identify these persons or things. Hence we may say, as the general rule, that as to the parties or the subject-matter of a contract, extrinsic evidence may and must be received and used to make them certain, if necessary, for that purpose." And see cases cited in note, ib. p. 549. The same author (p. 564, same volume), after a full discussion, states this proposition : "If the meaning of the instrument, by itself, is intelligible and certain, extrinsic evidence is admissible to identify its subjects or its objects, or to explain its recitals, or its premises so far, and only so far, as this can be done without any contradiction of, or any departure from, the meaning which is given by a fair and rational interpretation of the words actually used." Marshall, C. J., in Blake v. Doherty, 5 Wheat. 362, says, "It is undoubtedly essential to the validity of a grant, that there should be a thing granted, which must be so described as to be capable of being distinguished from other things of the same kind. But it is not necessary that the grant itself should contain such a description as, without the aid of extrinsic testimony, to ascertain precisely what is conveyed." For the purpose of applying the instrument to the facts and determining what passes by it, or who takes an interest under it, proof is

admissible of every material fact that will aid the court to identify the person or thing mentioned in the instrument, and place the court, as near as may be, in the situation of the parties to it; and this rule applies to the construction of all written instruments, deeds, wills, contracts, etc., under which any interest passes. 2 Phill. Ev. (Cow. & Hill's notes), p. 711, § 2, p. 718, note 510. Extrinsic evidence is admissible for identifying the thing as well as the person intended by the maker of the instrument, that is, to enable the court to interpret his words and to determine whether the description applies to the thing claimed. It is obvious that some kind of extrinsic evidence, even in the simplest case—except where the mere exposition of the instrument, taken by itself alone, is required by the court—is indispensably necessary, and, therefore, admissible. Ib. 718, and cases in note. When the description alludes to facts beyond the deed, parol evidence may be offered, not to contradict the description, but to locate the deed upon the land. 5 Ohio, 453. For numerous cases and varied circumstances, where the persons and subjects of deeds have been identified by extrinsic evidence, see Phill. Ev. (Cow. & Hill's notes), title, "Of the Admissibility of Extrinsic Evidence, and to Identify Persons or Things," and notes; 2 Pars. on Cont. 547 ; 2 Hilliard on Real Estate, 408, *et seq.*; 3 Washb. on Real Prop. 332, *et seq.*; 2 Kent, 747 ; 4 ib., title, Deed; Steinbach v. Stewart, 11 Wall. 566 ; Whitworth v. Harris, 40 Miss. 483 ; 10 Ohio, 42, 312 ; 5 ib. 452 ; 15 ib. 408 ; 10 Tex. 550 ; 7 Johns. 223 ; 18 ib. 84 ; 25 Wend. 402 ; 21 ib. 651, 659 ; 4 McLean, 481 : 5 M. & W. 363 ; 13 ib. 200 : 15 N. H. 317 ; 5 Bing. 425 ; 8 ib. 244 ; also, 25 Miss. 257 ; 1 Greenl. Ev. 350, § 201; 13 S. & M. 466 : 1 Comst. 102 ; 1 Sumner, 492 ; 8 S. & M. 681 ; 42 Miss. 724 ; 6 Pet. 345.

Steinbach v. Stewart, *supra*, to which we are referred by counsel for defendants in error, belongs to this class

of cases, and we cite it as sustaining our view; it being a simple and ordinary case of the admission of a deed in evidence, where, the description therein being uncertain, it was accompanied by extrinsic evidence of identification by delivery of possession to the grantor, long continued occupation, and other acts of the parties at the time of and subsequent to its execution, the court observing of the facts: "This was a parol identification followed by long continued possession unchallenged." We are also referred by the same counsel to McGuire v. Stevens, 42 Miss. 724. That was a suit to enforce specific performance of a contract for the sale of land; held to be void under the statute of frauds. We refer to it as embodying the doctrines herein advanced. The contract was declared void because it was "too indefinite and uncertain to authorize a decree for specific performance; and because "a bill to enforce a parol contract for the sale of land cannot be maintained in this state;" and the court say, "to let in parol testimony to supply the omission in the agreement, would be to allow that to pass by parol, which by law ought not to pass but by writing," which is not the case under consideration. In the discussion of that case it is said, "there was nothing in the receipts to point out or locate the lot, nor is there anything referred to therein to identify it, or by which its location can be ascertained." Negatively, the view we entertain, is expressed in the same opinion, as follows: "It is well settled both in England and in this country, that under the statute of frauds there can be no specific execution of a contract in respect to land, unless the parties have described and identified the particular tract which is to pass from one to the other; or unless the contract furnishes the means of identifying with certainty the land to be conveyed." 1 Sug. on Vendors 118; 12 Ves. 466; 4 J. J. Marsh. 377; 8 S. & M. 681. The following, from Wilkinson v. Davis, adm'r, Freem.

Ch. 58, is quoted in McGuire v. Stevens, as a correct rule, viz : "that every contract or deed for the conveyance of land must define its identity and fix its locality, or there must be such a description of the land as, by the aid of parol evidence, will readily point to its locality and boundaries." But, McGuire v. Stevens was widely different from the case at bar. There, "the contract" was not such as to take the case out of the statute. Here there is "such a description of the land as, by the aid of parol evidence, will readily point to its locality and boundaries." And herein lies the distinction between the cases where a grant is void for uncertainty in the description, and where, by reference to something else, it can, with the aid of parol evidence, be made certain. Hence, we are conducted to the result we have reached in the case at bar. See 42 Miss. 724, and cases therein cited.

We have said we should not undertake to determine whether the defect in the deed before us falls within the definition and rules of a latent or patent ambiguity, often, as the authorities show, a delicate and difficult task. We may observe, however, that according to the ordinary signification of the former, and as defined by the authorities, a latent ambiguity is raised by the proof of extrinsic facts, and by the same kind of proof, it may be explained. 2 Phill. Ev. (Cow & Hill's notes), 747 ; 1 Sug. on Vend. 181 ; 15 M. & W. 562 ; 5 Bing., N. C. 425 ; 3 Gray, 72 ; 3 Foster 46 ; 8 How. (U. S.) 274 ; 3 N. H. 60 ; 8 Bing. 244 ; 15 N. H. 317 ; 6 T. R. 671 ; Bouv. Law Dic., title, Ambiguity ; Burrill's Law Dic., title, Ambiguity ; 2 Sug. on Vend. 152 ; 2 Pars. on Cont., 557, and note ; 6 S. & M. 294 ; 7 ib. 111 ; 1 How. (Miss.) 591, etc.

According to Lord Bacon, the learned author of these rules, patent ambiguities are "never holpen by averment;" but Kent says, that rule is too general; vol. 2, p. 747 ; and is not of universal application. Broom's

Max. 472 ; 21 Wend. 651 ; 23 ib. 71 ; 1 Mason, 11 ; 1 Tex. 377 ; 3 Binn. 587 ; 4 ib. 482 ; 3 Stark. Ev. 1021 ; and subsequent authorities have left few cases subject to its operation, mainly those so uncertain as to be incapable of execution or enforcement. 2 Pars. on Cont. 557, note *e*. Indeed, these rules of Lord Bacon are less regarded of late than they were formerly. Ib. and cases. A simpler rule, perhaps, in most cases, is this, that evidence may explain but cannot contradict written language. Ib. 563.

A further, and, for the present purpose, final, if not conclusive argument in support of the view here presented, is furnished in the answer to the question, " when does the law stop in its endeavor to remove uncertainty in written instruments?" The answer is, " not until it is found that the contract must be set aside, and another one substituted, before certainty can be attained. In other words, if the contract which the parties have made is incurably uncertain, the law will not, or rather cannot, enforce it; and will not, on the pretense of enforcing it, set up a different but valid one in its stead." And " the law will not pronounce a contract incurably uncertain, and therefore null, until it has cast upon it all the light to be gathered, either from a collation of all the words used, or from all contemporaneous facts which extrinsic testimony establishes." Pars. on Cont. 561.

We conclude, upon general principles, as enunciated by modern authorities, and sustained by sound reason, that extrinsic evidence of the county and state, as proposed by the plaintiffs on the trial, ought to have be n admitted, in aid of the description of the land mentioned in the deed, and claimed in the suit, in view, apparently, of other means of local identification.

Wherefore the judgment is reversed and the cause remanded.