EDWARD C. YELLOWLY, JR., *v.* HENRY M. BEARDSLEY ET AL.

1. DEED OF TRUST. *Notice of trustee's sale. Essentials of.*

The essentials of a notice of sale under a trust deed are statements of the time, place and terms of sale and such a description of the property to be sold as, if read by persons familiar with the neighborhood. will advise them what is to be sold and the terms upon which it can be bought.

2. SAME. *Purpose of notice.*

The purpose of notice is not only to notify the grantors in the deed of trust, but the public, that the property may bring a fair price.

3. SAME. *Case at bar.*

A notice of sale, under a deed of trust, given by a substituted trustee, which describes the property to be sold only by referring to it as conveyed by the deed, as recorded, giving the book and page of the county land deed records, is insufficient to pass title at a sale made thereunder.

4. SAME.   *Subsequent mortgagees.   Sale under defective notice.*

Subsequent mortgagees and those holding under them can question the sufficiency of the notice of sale under a prior deed of trust.

5. SAME.   *Rights of purchaser under void notice.*

In such case the purchaser under the prior deed should be subrogated to the rights of a prior mortgagee to the amount of his money, with interest, which went to the satisfaction of the prior lien.

FROM the chancery court of Madison county.

HON. HENRY C. CONN, Chancellor.

Edward C. Yellowly, Jr., the appellant, was the complainant in the court below; Beardsley and others, the appellees, were defendants there.

In 1876 James B. Yellowly and his wife, parents of complainant, executed a deed of trust on the land in controversy to secure a note to one Thomas Helm. This note was all paid, except about $125, and, in 1879, Helm assigned the note to Edward C. Yellowly, Sr., an uncle of complainant herein. The deed of trust provided that the trustee, before sale, should give thirty days' notice of the time and place of sale in some newspaper, published in Madison county, and should sell at public auction, at the courthouse door, for cash, to the highest bidder. The following advertisement of the sale was made by the trustee:

"In and by virtue of the powers vested in me, as trustee, by the terms of a deed of trust, recorded in book JJ, page 484, of the records of Madison county, Mississippi, in the chancery clerk's office of said county, I will sell at the courthouse door in said county, at public outcry, for cash, to the highest bidder, between the hours prescribed by law for sheriff's sales, on Friday, October 31, 1879, that tract of land described in said deed of trust, to satisfy the debt secured thereby, and convey such title to said property as is vested in me, as trustee, by the terms of the said deed of trust, to the purchaser or purchasers thereof."

The land was sold on the day advertised, when complainant purchased it for $105. At that time complainant, a son of the grantor in the deed of trust, was only six years old. In 1878, two years after the Helm deed of trust was executed, James B. Yellowly and his wife executed a second deed of trust on this same land to Robinson & Stevens, under which the land was sold, and appellees, by successive conveyances, hold under that deed. In 1894, complainant, Edward C. Yellowly, Jr., filed the bill in this case in the chancery court against appellees, seeking to have an account of the rents from defendants, and to have their deed canceled as a cloud upon his title, and for possession, or, in the alternative, for a lien upon the land for the $105, with six per cent. interest from October 31, 1879. The defendants answered, and made their answer a cross bill, in which they sought to have the conveyance to plaintiff annulled, as fraudulent, and that he be divested of all interest in the land.

From a decree dismissing his bill, and granting the relief sought by the cross bill, complainant appealed to the supreme court.

*W. H. Powell*, for appellant.

If the notice of sale was sufficient, which I will show, then the defendants are estopped from assailing complainant's title through the negligence of their grantors, Robinson & Stevens. When Robinson & Stevens took their mortgage they had constructive notice, by the record, that the Helm deed in trust was unpaid, and, besides, actual notice that it was unpaid.

"The rule has been settled that, where a public sale under a power has been fairly conducted, it will not be disturbed on the sole ground that the purchase price realized was inadequate or greatly below the market value of the property. The sound principles upon which this rule rests is that, when the grantor of the power authorized a public sale, he assumed the risk of a sacrifice resulting from lack of competition among bidders." 26 Am. & Eng. Enc. Law, 952, and notes; Freeman's Chan-

cery Rep., 441.   If J. B. Yellowly committed any wrong in his dealings with Robinson & Stevens, his action cannot defeat the rights of this complainant.   The complainant holds by virtue of the gift from his uncle, and the uncle and Helm were *bona fide* purchasers for value.

We have no statute regulating the kind of notice (some of the states have) to be given by trustees of sales.   It is well established that notice is that which puts a party upon inquiry, which, if followed up, will lead to discovery of that intended.   "It has been held that an omission to give the names of either mortgagor or mortgagee is cured by a correct reference to the book and page of the record, because any one desiring to learn the names can do so by inspecting the records."   26 Am. & Eng. Enc. Law, 906.

"In one case a notice which named the mortgagor but not the mortgagee, and was not signed by the latter and contained no reference to the record, was sustained."   *Ib.*, 907.

The notice in this case referred to the book and page of the record and was published in the county newspaper for thirty days, and the world could have gone to the courthouse and found by the reference the grantors and the description of the land, and could have been present and bid for it at the sale. A portion of the world was in fact present and bid.   The trustee was a suitable person and acted in the best of faith in making the sale and no suspicion clouds his act.

"In proceedings relating to real property a detailed description of the property does not seem to be necessary unless especially prescribed by statute."   16 Am. & Eng. Enc. L:, 816.

"A compliance with the requirements of a deed of trust as to notice of sale is all the law demands."   *Johns* v. *Sergeant*, 45 Miss., 332.

The chancellor refused to decree a lien in favor of complainant upon the lands for $105, with interest at six per cent per annum from the date of the sale, October 31, 1879, and in doing so he surely erred.

*Calhoon & Green*, on the same side.

It is absolutely undisputed: (1) That a valid debt supported the trust deed to Helm, and it was assigned to Edward C. Yellowly, the elder; (2) that this trust deed was executed before the deed was made to Robinson & Stevens, under whom appellees claim; (3) that the trust deed was duly recorded and notice to Robinson & Stevens and to the world; (4) that, in addition to all this, Robinson & Stevens, at the very time they took their deed, had actual notice that the Helm trust deed was not fully satisfied.

That the debt was not paid is too plain for discussion, and it is equally plain that it was owned by Edward C. Yellowly, the elder. If a balance was due on the older trust deed debt, and a sale made, then, according to every authority under the sun, appellant has the title, unless he is precluded by his own fraud or the fraud of the elder Yellowly, the owner of the debt, and there is no pretense of fraud on the part of either, and there could be none predicated of the conduct of appellant, who was but six years old.

Appellees are in equity, by their cross bill, seeking to cancel the deed of the trustee to appellant, and make no offer to pay the balance on the debt, which balance is overwhelmingly proved. If there be hardship to appellees, it arises from their own negligence, and they must yield to inexorable law. It is curious indeed that one who is assignee of one unsatisfied debt, secured by recorded trust deed, can be made to lose his debt by what anybody said, or by anybody's scheme to become owner or have his son become owner under the sale. This is the more curious coming from one who took his own deed with full actual, as well as record, notice of the nonpayment of the debt.

That is certain which may be made certain, and this maxim is applied in full force even to judgments. Reference to the record is enough in trust sales. This is so stated in the latest book on the subject. Pingree on Mortgages, sec. 1347. See

also 2 Jones on Mortgages, sec. 1846; *Ib.*, sec. 1802; *Ib.*, sec. 1821; *Ib.*, sec. 1830. But a conclusive answer is that one of the grantors was present, not objecting to the sale, but approving it. *Smith* v. *Walsh*, 63 Miss., 589, 590.

Trustees' advertisements are for the beneficiaries and grantors, not for subsequent purchasers. These have no right to object, because there is no duty on the part of the trustee or beneficiary to see if there were junior purchasers or incumbrances. The right to object to insufficient advertisements of sale does not run with land to junior purchasers or incumbrances. Mrs. Yellowly is not objecting.

But finally, this is not pleaded, and there is no tender of the balance due or offer to pay it in the cross bill.

*F. B. Pratt*, for appellee.

The sale by Pitchford, substituted trustee, should be set aside without regard to any questions of fraud in the transaction that led up to the sale, for the reason that the notice of sale was wholly insufficient. "In giving notice of sale the trustee must follow the power in good faith." "He must give proper notice in a reasonable manner." "Notice must be certain as to time, place and description of the property." "The purpose of notice is not so much to notify the mortgagor as to inform the public generally so that bidders may be present and a fair price obtained." "The trustee must exercise a sound and wise discretion to procure the largest price possible." The foregoing are well established doctrines as laid down in 2 Perry on Trusts, secs. 600–608. See, also, note to *Tyler* v. *Herring*, 19 Am. St. Rep., 263–288; 26 Am. & Eng. Enc. L., 901, 902; 2 Jones on Mortgages, secs. 1906, 1907, 1840, 1843, 1829, 1836, 1910, 1911; *Wilber* v. *Curtis*, 104 Ill., 309; *Meacham* v. *Shell*, 93 Ill., 148; *Cassedy* v. *Cook*, 99 Ill., 388; *Flint* v. *Lewis*, 61 Ill., 305; *Rush* v. *Farnsworth*, 106 Mass.; *Sticky* v. *Adams*, 127 Mass., 202; *Briggs* v. *Briggs*, 135 Mass., 309; *Russide* v. *Peter*, 33 Md., 120; *Kauffin* v. *Walker*, 9 Md. 240.

Argued orally by *S. S. Calhoon*, for appellant, and by *F. B. Pratt*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

The notice of the sale in this case does not describe the land to be sold otherwise than by reference to the pages of the record where the trust deed was recorded. Counsel for appellant cite 2 Ping. Chat. Mort., p. 1253, sec. 1347, note 4, to show that this is sufficient. The case cited is *Fitzpatrick* v. *Fitzpatrick*, 6 R. I., 64. That volume is not in our library, but we have found the case in 75 Am. Dec., 681, where we also find, at page 701, the case of *Hoffman* v. *Anthony*, 6 R. I., 282, with note. In *Fitzpatrick* v. *Fitzpatrick*, not only was there a reference to a recorded plat, but the lot is also particularly described in the notice. In *Hoffman* v. *Anthony*, "the lots of land were sufficiently described in the advertisement," and the court held the notice void because it was not "signed by anybody, and did not name the mortgagor or mortgagee," and made improper reference to the record. In the note to this case (at page 706, 75 Am. Dec.), the case of *Candee* v. *Burke*, 1 Hun, 546, is referred to as holding the doctrine contended for by appellant. But the point in that case was whether the notice was void because it omitted the name of the mortgagee, under a statute of New York, and it is said: "The mortgage was in all other respects correctly described." And the court puts the decision not on that ground even, but (pages 549 and 550) on the ground that the purchaser was not a party to the suit. This case cites *Judd* v. *O'Brien*, 21 N. Y., 186, for support, but in this case the property was described in the notice as "being in the village of Penn Yan, in the county of Yates, known and designated as 'Canal Lot Number Seventeen.'" In *Bacon* v. *Insurance Co.*, 131 U. S., 258 (9 Sup. Ct., 787), the contention was simply as to the effect of the misspelling of the mortgagee's name in a notice, under the statutes of Michigan. And in *Wilson* v. *Page*, 76 Me., 279, the notice particularly

describes the land.   It will thus be seen that none of the authorities relied on by appellant sustain the proposition that, independently of any statute, a mere reference, in a notice of sale in a trust deed, to the page of the record for description of the premises to be sold, without more, not naming grantor or grantee, and signed by a substituted trustee, is a sufficient description of the land to be sold.   On the contrary, the precise question was adjudicated the other way in *Reeside* v. *Peter*, 33 Md., 120. The court said: "The authority by which the property is sold, a description thereof full enough to be understood by the public, its popular name, if any, its proximity to other known property, the name of the occupant at the time, or any other prominent characteristics, may all or either afford means of informing the public and others concerned of the identity of the premises.   This notice does not state even from or to whom was the deed of trust, but merely refers to the book, among the land records of the county, where that may be found." And the sale was held void.

The same rule is approved in Mr. Freeman's splendid note to *Tyler* v. *Herring*, 67 Miss., 169 (19 Am. St. Rep., at p. 288), s.c. 6 South., 840. He says: "Manifestly the objects to be accomplished by a notice of sale are to advise the public of what is to be sold, and the time when, and the place where, and the terms upon which it may be bought; and the essentials of a notice of sale under a trust deed are, therefore, a statement of the time, place, and terms of sale, and such a description of the property to be sold as, if read by persons familiar with the neighborhood, will advise them of what is to be sold, and upon what terms it can be bought, and induce them to attend the sale as prospective bidders, should they feel an inclination to invest in the property to be sold."   And he concludes by saying that, "under ordinary circumstances, it is indispensable in a notice of sale to set forth the time and the place of sale, and a correct description of the property."   The purpose of notice is not only to notify mortgagor, but the public, that the property

may bring a fair price. 2 Perry on Trusts, secs. 608*o*–608*r*; 26 Am. & Eng. Enc. L., pp. 901, 902; note to *Warren* v. *Tiffany*, 9 Abb. Prac., 66.

We think it clear that the notice was wholly insufficient, and the sale void. Many reasons readily occur to the legal mind why such a description, by reference only, will not do. It would open the door wide to the grossest frauds. But it is said the defect in the notice was not pleaded specifically in the answer. This is true, but is immaterial, as the decree must be reversed on another ground. On the remanding of the case, the chancery court should allow the defendants, upon request to that end, to amend their answer, so as to set up specifically insufficiency of the notice.

It is said the subsequent mortgagee has no right to make the defense of no notice, and such gross inadequacy of consideration as to amount to fraud in the sale. But if, as held in *Yates* v. *Mead*, 68 Miss., 787, "in a controversy between junior lienor and senior mortgagee, who has taken the mortgaged property under an absolute conveyance in satisfaction of his mortgage debt, the burden of proof is on the latter to show that such debt was equal to the value of the property taken, and that, the equity of redemption being worthless, no harm resulted to the junior lienholder," then surely the subsequent mortgagee has an equity to insist that the sale shall not be so managed as fraudulently to sacrifice the property to which he also looks for payment of his debt. But he who seeks equity must do equity, and the amount bid by the complainant (a minor at the time), $105, with six per cent. interest thereon from the day of sale, should be required to be refunded as a condition of annulling the sale.

*For refusing to allow this, the decree must be reversed and the cause remanded for proceedings in accordance with this opinion.*